UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| **Anthony Tackett,**<br><br>    Plaintiff,<br><br>v.<br><br>**Kilolo Kijakazi,**<br>**Acting Commissioner of the Social**<br>**Security Administration**<br><br>    Defendant. | Civil Action No. 7:20-90-KKC<br><br><br>**OPINION AND ORDER** |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the parties' cross-motions for summary judgment. (DE 16, 18.) Anthony Tackett brought this action under 42 U.S.C. § 405(g) seeking judicial review of the denial of his claim for disability insurance benefits and supplemental security income. Having reviewed the record, the Court will deny Tackett's motion, grant the Commissioner's motion, and affirm the Commissioner's decision.

## STANDARD OF REVIEW

This Court's review of the Administrative Law Judge's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 1157 (2019). The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of

district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152–53 (1999).

To determine whether a claimant has a compensable disability under the Social Security Act, the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

*Step 1*: If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2*: If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3*: If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4*: If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5*: If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner

to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1520(g)(1).

## Procedural History

In denying Tackett's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act. 20 C.F.R. § 404.1520(a).

At step one, the ALJ determined that Tackett has not engaged in substantial gainful activity since August 15, 2017. (Administrative Record ("AR") at 59.)

At step two, the ALJ determined that Tackett suffered from the severe impairments of degenerative joint disease of the shoulders, degenerative disc disease, gout, anxiety disorder, and depressive disorder. (AR at 60.)

At step three, the ALJ found that Tackett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 60.)

Before proceeding to step four, the ALJ determined that Tackett has the residual functional capacity ("RFC") to perform a range of "light" work as defined in 20 CFR 404.1567(b) except occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The ALJ determined that Tackett can occasionally stoop, kneel, crouch, and crawl; that he should avoid concentrated exposure to vibration, and hazards of moving machinery, and unprotected heights; that he can stand/walk two hours at a time, six hours total in an eight-hour workday; that he can have no reaching overhead, and frequently reaching in all other directions bilaterally; that he can perform no fast-paced or production quota work, no interaction with the public, occasional interaction with co-workers, but no tandem tasks, occasional interaction with supervisors in a non-confrontational setting, and no supervisory responsibilities. (AR at 62–63.)

At step four, the ALJ determined that Tackett is unable to perform any past relevant work. (AR at 70.)

At step five, the ALJ determined that, considering the RFC described above and Tackett's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Tackett can perform, and thus, he is not disabled. (AR at 71.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Tackett's request for review. *See* 20 C.F.R. § 422.210(a). Tackett therefore has exhausted his administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

## ANALYSIS

### I. The ALJ Properly Considered the Medical Opinions and Prior Administrative Medical Findings

Tackett first argues that the ALJ erred in finding Dr. Scott Hamann's opinion persuasive because it was rendered in 2016, meaning the doctor did not have the opportunity to review later medical evidence. (DE 16 at 2.) He asserts that reliance on Dr. Hamann's medical findings is "capricious" and "renders the ALJ's findings without support from substantial evidence" because Dr. Hamann's opinion was based on an examination that occurred prior to "worsening of Mr. Tackett's condition." (DE 16 at 2–3.) Essentially, Tackett argues that because Dr. Hamann did not review later medical evidence that was in the record, his opinion not only cannot constitute substantial evidence supporting the ALJ's determination, but that reliance on his opinion renders the ALJ's decision unsupported by substantial evidence regardless of whatever other evidence the ALJ may have relied upon. The Court disagrees.

#### A. Revised Regulations Are Applicable to This Case

Because Tackett applied for benefits after March 27, 2017, (AR at 57), the case before the ALJ was governed by new regulations that differ

substantially from prior regulations. *See, e.g.*, 20 C.F.R. § 404.1520(c) (2017); *see also Carrino v. Comm'r of Soc. Sec.*, Civil Action No. 20-380-HRW, 2021 WL 2895181, at *2–3 (E.D. Ky. July 9, 2021) (explaining the regulatory changes to the way medical source opinions are evaluated). Among changes relevant to this case, the Commissioner chose not to retain the "treating source rule," which required ALJs to give deference to a claimant's treating source opinion evidence. *Carrino*, 2021 WL 2895181, at *2 (citing 82 Fed. Reg. at 5853); *see also Martin v. Comm'r of Soc. Sec.*, Civil Action No. 3:20-CV-254-CHB-CHL, 2021 WL 4097293, at *2–3 (W.D. Ky. Sep. 8, 2021) (describing the treating source rule). In evaluating claims filed March 27, 2017, or later, the agency "'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.'" *Carrino*, 2021 WL 2895181, at *3 (quoting 20 C.F.R. § 404.1520c(a) (2017)).

While the ALJ must articulate their consideration of all medical opinions, the revised regulations that govern this case no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). *Compare* 20 C.F.R. § 404.1527(c)(2) (2016) and 20 C.F.R. § 404.1527(c)(2) (2017) *with* 20 C.F.R. § 404.1520c(b) (2017). Rather, the ALJ evaluates the persuasiveness of a medical opinion using five factors: (1) supportability, (2) consistency (3) relationship with the claimant (which includes: (i) length of the treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship), (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(a)–(c) (2017).

### B. The ALJ Properly Considered the Persuasiveness of Dr. Hamann's Medical Opinion

In October 2016, consultive physician Dr. Scott Hamann found that Tackett could lift and carry ten pounds frequently and twenty-five

pounds occasionally, and that he could kneel, squat, or sit for two hours in a workday, and could stand or walk for six hours in a workday, but that he could not lift overhead. (AR at 622–23.) Tackett argues that Dr. Hamann's medical findings could not constitute substantial evidence *per se* because they were rendered in 2016, and thus the doctor did not have the opportunity to review later evidence, such as subsequent surgeries that Tackett underwent. However, the ALJ properly considered the two primary criteria relevant to the findings' persuasiveness: supportability and consistency. 20 CFR 404.1520c(a),(c)(1)–(2) ("The most important factors we consider . . . are supportability and consistency.") (internal citations omitted); (*see* AR at 69–70.)

The ALJ reasonably found that Dr. Hamann's findings were consistent with the medical evidence as a whole. Specifically, the ALJ found Dr. Hamann's prior administrative findings to be supported by MRI evidence in the record. (AR at 69; *see* AR at 491–92, 566–67, 568–70, 2058, 2059.) According to the ALJ, the shoulder MRIs were consistent with Dr. Hamann's finding that Tackett could not lift overhead, and that the lower back MRIs were consistent with the doctor's finding that Tackett could kneel, squat, or sit for two hours in a workday and stand or walk for six hours in a workday. The ALJ's finding that Dr. Hamann's opinion was consistent with other medical evidence was not unreasonable, and consistency is a proper factor to consider in evaluating the persuasiveness of Dr. Hamann's opinion.

Additionally, the ALJ stated that evidence showed "extensive treatment in the form of multiple shoulder surgeries and minimal treatment for [Tackett's] back and neck disorders and gout," (AR at 70), and despite his shoulder surgeries, the ALJ found that "clinical findings on exam were moderate. He was observed to have reduced range of motion of both shoulders, some tenderness, intermittent sensation deficits, some weakness, but full motor strength and grip strength in the hands." (*Id.*) As far as Tackett's neck, back, and gout symptoms, the ALJ found that the medical evidence as a whole showed he "was usually noted to have a normal gait, full motor strength, some swelling and redness of the great toe, and some reduced range of motion, tenderness

and spasm at times." (*Id.*) These statements show that in reviewing the record as a whole, the ALJ found the objective medical evidence consistent with Dr. Hamann's findings, which is a proper consideration in determining the persuasiveness of a medical opinion.

The ALJ also reasonably found that treating advanced practice nurse Tracey Hedrick-Hamilton's medical opinion was not persuasive after focusing on its supportability and consistency with the record. (*Id.*) (finding that her opinion was unpersuasive because it was "not supported by [her own] treatment records and the medical evidence as a whole"). The ALJ found her own treatment records to be inconsistent with her opinion and found Dr. Hamann's opinion was inconsistent with hers. (*Id.*) The ALJ noted that Ms. Hedrick-Hamilton "generally noted minimal findings on exam with a normal gait, full motor strength and only some redness and swelling of the great toe from gout, tenderness and some reduced range of motion on musculoskeletal exam," all of which is inconsistent with her opinion. (*Id.*) Likewise, Dr. Hamann "found less symptoms and restrictions on exam" than she did in her opinion, and as a "specialist with program knowledge," the ALJ could reasonably have found Dr. Hamann's opinion more persuasive than Ms. Hedrick-Hamilton's. (*Id.*); 20 C.F.R. § 404.1520c(c)(4); *see id.* § 404.1513a(b)(1) ("State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation"). Under the current regulations, Ms. Hedrick-Hamilton's medical opinion is not entitled to any special deference, even as a "treating source," and the ALJ properly considered its persuasiveness based upon the factors set forth in 20 C.F.R. § 404.1520c(a)–(c) (2017).

Tackett cites *Hollins v. Astrue* in support of his proposition that an ALJ cannot rely on the opinion of a non-examining reviewer to offset the treating source opinion if the reviewer did not see a complete record. *Hollins v. Astrue*, 780 F. Supp. 2d 530 (E.D. Ky. 2011); (DE 16 at 3.) But administrative regulations and guidance have changed since *Hollins*, and it is not applicable here. The holding cited by Tackett relies on Social Security Rule 96-6p, which was rescinded and replaced by Social Security Rule 17-2p. SSR 17-2p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).

Nothing in Rule 17-2p indicates "that the non-examiner should have reviewed a complete record which contained the report of a specialist in the claimant's particular impairment containing more detailed and comprehensive information than that available to the treating source," as was the case under the previous rule. *Hollins*, 780 F. Supp. 2d at 535–36; *compare* SSR 96-6p, 1996 WL 374180 (July 2, 1996), *with* SSR 17-2p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). Rather, under the revised regulations the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to a treating source, 20 C.F.R. § 404.1520c(a) (2017), and the ALJ may give greater weight to "any medical opinion," *id.*, that she finds persuasive based upon the factors articulated in 20 C.F.R. § 404.1520c(a)–(c) (2017). Here, the ALJ found Dr. Hamann's opinion to be persuasive based upon its supportability and consistency with the record, and the ALJ's reliance on that opinion over other medical opinions and prior administrative medical findings is permissible.

As the Commissioner concedes, the record was "quite mixed," (DE 18 at 1), but the ALJ properly weighed the evidence before it in making a determination. It is not the Court's role to "try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility," *Bradley v. Sec'y of Health and Hum. Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988), but rather to determine whether the ALJ's decision is supported by substantial evidence. Tackett may disagree with the ALJ's determination, and there may well be evidence one could reasonably interpret to support a different conclusion, but this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" *Golden Living Ctr. v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 426 (6th Cir. 2011) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The ALJ did not err in finding Dr. Hamann's findings and opinion persuasive. Its findings were a reasonable interpretation of the evidence as a whole and those findings are entitled to great deference.

The ALJ's decision was supported by substantial evidence and this Court will not disturb that decision.

## II. The ALJ Properly Considered Tackett's Relevant Impairments and Their Severity in Assessing His RFC

Tackett next argues that the ALJ erred by allegedly failing to properly consider the severity of his hand impairments, headaches, or gout and failing to adequately accommodate for them in the RFC. (DE 16-1 at 5–8.) Between steps three and four of the sequential disability benefits analysis, the ALJ assesses the claimant's RFC (residual functional capacity), which is the most the claimant can do despite their impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 404.1546(c). At this stage, the claimant bears the burden of proving that an impairment should be accommodated in their RFC assessment. *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (explaining that a claimant bears the burden of proving his lack of residual functional capacity)). The ALJ must address the claimant's reported symptoms in their RFC assessment, *see* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), but is only required to incorporate limitations that they accept as supported by evidence. *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

### A. Hand and Headache Impairments

Contrary to Tackett's contention, the record shows that the ALJ *did* consider his reported hand impairment and headache symptoms, and simply found that his reports of pain and other symptoms were inconsistent with other evidence and thus did not support a finding of disability. (AR at 64.) The RFC explicitly discusses Tackett's reports of numbness in his hands (paresthesia), headaches, and gout. (AR at 63, 64, 68.) In considering his reports of paresthesia, the ALJ noted evidence showing he had full grip strength and normal sensation in his hands, which contradicted Tackett's reported severity of symptoms. (AR at 65,

66.) The ALJ "evaluated [Tackett's] statements in relation to the objective medical evidence," 20 C.F.R. § 404.1529(c)(4), found his statements inconsistent with the evidence, and thus determined his reported hand impairments could not support a finding of disability. (AR at 64.)

The ALJ also discussed Tackett's reported headaches and found that his statements were inconsistent with his "minimal and conservative treatment" for his neck condition, which was the cause of the headaches. (AR at 68; *see* AR at 90). See 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ considers the type and effectiveness of treatment when evaluating symptoms). Tackett's claim that "the ALJ did not consider" his "paresthesia of the hands or headaches," (DE 16-1 at 8), is incorrect—the ALJ properly considered Tackett's statements and simply found them inconsistent with the objective medical evidence, and thus did not include his reported impairments as limitations in the RFC.

Tackett further takes issue with the ALJ's consideration of normal clinical findings, pointing to several clinical visits that do not include musculoskeletal findings. (DE 16-1 at 7.) While it is not entirely clear why he believes the ALJ's consideration was error, he appears to argue that some of the visits cited by the ALJ in consideration of Tackett's reported hand and headache impairments mischaracterize the treatment notes. The visits cited by Tackett do not contain musculoskeletal findings, but many other visits cited by the ALJ include musculoskeletal findings within normal limits. (*See* AR at 65–68; *e.g.*, AR at 936–37 (normal gait, strength, and tone).)

Regardless, the ALJ acknowledged that there was evidence of more limitations and evidence of lesser limitations, (*see* AR at 65–68), but ultimately concluded that the inconsistent evidence did not fully support Tackett's reported symptoms. Again, Tackett may disagree with the ALJ's assessment, but he has failed to show that it was not supported by substantial evidence.

### B. Gout Accommodations

Tackett also claims that the ALJ did not make accommodations for gout affecting his lower extremity use, despite finding gout to be a severe impairment. (DE 16-1 at 9.) Tackett argues that it was error for the ALJ to not include any limitations for balance in the RFC, because evidence showed due to gout, he had foot pain, may have required use of a two-handed device to ambulate alone on a level surface, and Ms. Hedrick-Hamilton's opinion stated he could never balance. (*Id.*) However, the ALJ stated that "a review of the record does not support gout flares to the extent alleged at the hearing," citing Tackett's noncompliance with his gout treatment. (AR at 68; *see* AR at 1794 ("[Patient] had not been taking his gout medicine."), 1872 ("history of non compliance with gout treatment"), 1864 ("Says not compliant with attempts at purine restricted diet. Says not sure if complaint (*sic*) with medications for gout.").) The ALJ considered the entire medical record in weighing the evidence, including whether to find Ms. Hedrick-Hamilton's opinion persuasive. Tackett's assertion that certain evidence supported more accommodations is immaterial because the issue is not whether there is sufficient evidence to support a different decision, but whether the ALJ's decision is supported by substantial evidence, and the ALJ's findings were supported by substantial evidence.

Further, Tackett claims that the RFC did not make accommodation for his gout impairment, but the ALJ explicitly reduced Tackett's RFC to include "additional postural and environmental limitations in light of [his gout]." (AR at 68.) The RFC stated Tackett could only "occasionally climb ramps and stairs, but never ladders, ropes or scaffolds" and "stand/walk two hours at a time, six hours total of an eight-hour workday"—all accommodations related to use of the lower extremities and balance. (AR at 62–63.) So, while the ALJ may not have reduced Tackett's RFC to the extent he desired, the ALJ properly considered the inconsistencies in the evidence and addressed the limitations she reasonably believed to be caused by his gout. 20 C.F.R. § 404.1529(c)(4) (an ALJ considers inconsistencies in the evidence when evaluating symptoms).

Reviewing courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. And "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'" *Golden Living Ctr. v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 426 (6th Cir. 2011) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The record here was often mixed, and perhaps could have supported conclusions different from those made by the ALJ. However, that is irrelevant. What matters is that the ALJ properly considered the objective medical evidence before it and made findings and conclusions substantially supported by that evidence.

Despite Tackett's contention to the contrary, the RFC accurately described him based on the ALJ's evaluation of the evidence as a whole. Tackett may find certain evidence more or less persuasive than the ALJ did, but the ALJ's findings were reasonable and supported by substantial evidence. To the extent there was contrary or mixed evidence in the record, the ALJ properly considered its persuasiveness based upon the applicable regulations and guidelines. Tackett is essentially asking this Court to reweigh the objective medical evidence and credibility of medical opinions, but that is not the Court's role. It is simply to determine whether the ALJ's decision is supported by substantial evidence. Here, it is.

### III. Remand Under the Sentence Six of 42 U.S.C. § 405(g) Is Not Warranted Because Tackett Has Not Established Materiality of New Evidence

Sentence six of 42 U.S.C. § 405(g) allows a court to remand a case for reconsideration by the Commissioner of Social Security when there is new, material evidence that was not incorporated into the record of a prior proceeding. Such a remand is appropriate when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Glasco v. Comm'r of Soc. Sec.*, 645 F.

App'x 432, 437 n.1 (6th Cir. 2016) (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98(1991)). "Under this so-called 'sentence six' remand, a claimant wishing to submit additional evidence to the ALJ must establish (1) that the evidence is 'new' or was otherwise unavailable to the claimant, (2) that the evidence is 'material,' and (3) that he or she has 'good cause' for failing to submit the evidence below." *Id.* at 435 (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006)). "Failure to establish any one of these three elements is fatal to the moving party's request." *Id.* (citing *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 n.1 (6th Cir. 1988)). Evidence is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore*, 865 F.2d at 711)).

Tackett argues that his left shoulder surgery in August 2019, which occurred after his hearing in front of the ALJ, warrants a remand under sentence six of § 405(g). The Court disagrees. While his additional surgery may satisfy the first and third elements required for a "sentence six" remand, Tackett has failed to establish the second element—that evidence of a seventh left shoulder surgery is material. Tackett merely asserts, without explanation, that because the surgery is related to some of the impairments and complaints at issue in his case, it warrants remand. However, new evidence is material "only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357. The conclusory assertion that the new surgery "further discounts the reliability of [Dr. Hamann's] opinion," (DE 16-1 at 13), is insufficient to show materiality. The ALJ's decision took evidence contrary to Dr. Hamann's opinion into account, and Tackett has failed to show how, in the context of the entire record, the seventh surgery would have caused the ALJ to reach a different conclusion on the persuasiveness of that opinion.

Tackett makes no effort to explain how evidence of another surgery would lead to a different disposition of his disability claim and

offers no evidence that he suffers greater functional limitation because of it, nor how evidence of another shoulder surgery is inconsistent with the ALJ's decision. Because Tackett has failed to establish the materiality of his August 2019 shoulder surgery, a remand under sentence six of § 405(g) is not warranted.

### IV. The ALJ's Incorrect Citation of the VE's Testimony in Her Decision Was Harmless Error

At step five of the evaluation, an ALJ must decide whether a significant number of jobs exist that will accommodate the claimant's RFC and vocational profile. *Jones*, 336 F.3d at 474. Using the medical-vocational grid in conjunction with a "Vocational Specialist Comments Form" and vocational expert (VE) testimony, the ALJ concluded that a significant number of jobs existed in the national economy that Tackett could perform. (AR at 71.) In reaching this conclusion, the ALJ relied on the VE form to find that with his limitations, Tackett could perform representative unskilled light work such as routing clerk, price marker, and inspector.

However, the number of jobs cited by the ALJ differed from the number of jobs identified by the VE. The VE identified 50,000 routing clerk positions, 110,000 price marker positions, and 30,000 inspector positions in the national economy for a total of 190,000 jobs. (AR at 102.) But the ALJ's decision incorrectly stated that the VE had identified *60,000* routing clerk positions and *130,000* inspector positions for a total of 300,000 jobs. (AR at 72.) Tackett argues that the error warrants remand, because the ALJ may have reached a different conclusion if the occupational base she considered had consisted of 110,000 fewer jobs. The Commissioner counters that this was at most harmless error, because whether there were 190,000 or 300,000 jobs that Tackett could do, the ALJ's conclusion was supported by substantial evidence.

The task of deciding exactly what constitutes a "significant number" of jobs is admittedly difficult, but the Sixth Circuit has provided some guidance on how courts should address the issue. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Declining to "'set forth

one special number [as] the boundary between a "significant number" and an insignificant number of jobs,'" the Sixth Circuit has stated courts should address the determination case-by-case. *Nejat*, 359 F. App'x at 579 (quoting *Hall*, 837 F.2d at 275).

Courts are generally guided by the numbers that have been found "significant" in other cases. *Schadenfroh v. Colvin*, No. 09-CV-223, 2014 WL 1260123, at *13 (S.D. Ind. Mar. 27, 2014). While the Sixth Circuit has declined to pinpoint exactly what constitutes a significant number of jobs, several cases offer guidance. In *Nejat*, 359 F.App'x at 579 (collecting cases), the court held 2000 jobs was a significant enough number to withstand the plaintiff's challenge, and approvingly cited other cases where as few as 500 jobs were deemed significant. Similarly, in *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016), the court held 6000 jobs to be sufficiently significant.[1]

In the instant case, the 190,000 identified by the VE is significantly more potential jobs than were identified in *Nejat* and *Taskila*. It is also a number that fits comfortably within what other courts in this circuit have deemed "significant." *E.g., Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 49 (6th Cir. 2018) (83,000 jobs); *Taplin v. Comm'r of Soc. Sec.*, No. 1:19-cv-172, 2019 WL 5227996, at *3 (W.D. Mich. Oct. 4, 2019) (15,500 jobs); *Charon v. Comm'r of Soc. Sec.*, No. 1:17-cv-1124, 2018 WL 9617555, at *3 (W.D. Mich. Nov. 27, 2018) (70,000 jobs). So, even though the number of jobs cited by the ALJ in its decision was 300,000 (110,000 more than the VE actually identified), the error was harmless because substantial evidence supports the ALJ's finding that there are a significant number of jobs that Tackett could perform.

---

[1] At least one court in this circuit found these holdings unpersuasive, arguing that they rely at least in part on a misunderstanding of regional versus national job numbers. *Isaac v. Comm'r of Soc. Sec.*, No. 20-11573, 2021 WL 4167211, at *3 (E.D. Mich. Sep. 14, 2021). As that court notes, the decision in *Taskila* that "[6000] jobs in the United States fits comfortably within what this court and others have deemed 'significant'" relies, at least in part, on a misunderstanding that the 1000 jobs discussed in a case it cites from the Seventh Circuit, *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009), was the national economy number, when it was actually discussing regional numbers. *Taskila*, 819 F.3d at 905. Even if the *Taskila* court conflated national versus regional numbers in one case from another circuit, that does not affect its determination that "[6000] jobs in the United States fits comfortably within what *this court* . . . ha[s] deemed 'significant.'" *Taskila* at 905 (emphasis added).

For all these reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

(1) The plaintiff's motion for summary judgment (DE 16) is **DENIED**;

(2) The defendant's motion for summary judgment (DE 18) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment will be entered contemporaneously with this order.

Dated November 12, 2021.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY